**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:16-CV-50-GNS**

**JANICE COLSTON,**
**Executrix of the Estate of Tommie Haugabook,**                     **Plaintiff,**

v.

**REGENCY NURSING, LLC,**                                                 **Defendant.**

## MEMORANDUM OPINION AND ORDER

Defendant Regency Nursing, LLC ("Regency Nursing") has filed a motion for entry of a qualified protective order permitting it to conduct *ex parte* communications with treating physicians of decedent Tommie Haugabook ("Haugabook"). (DN 27.) Regency Nursing wishes to contact Haugabook's treating physicians in order to conduct informal, private interviews regarding the care and treatment that they provided to Haugabook. Plaintiff Janice Colston ("Colston"), executrix of Haugabook's estate, did not file a response. *See* LR 7.1(c) ("Failure to timely respond to a motion may be grounds for granting the motion."). The motion is now ripe for review. For the following reasons, Regency Nursing's motion for entry of a qualified protective order (DN 27) is **granted**.

## BACKGROUND

Colston filed her complaint in Jefferson (Kentucky) Circuit Court on January 4, 2016 (DN 1-2). She alleges that while Haugabook was a resident of a facility operated or managed by Regency Nursing, Regency Nursing's negligent actions led Haugabook to suffer embarrassment, physical injuries, and ultimately, death. (*Id.*) Regency Nursing removed the matter to this court on January 27, 2016 (DN 1). The parties engaged in discovery and some dispositive motion

practice. On June 27, 2017, Regency Nursing filed the motion for qualified protective order (DN 27). As is noted above, Colston did not respond.

## DISCUSSION

Rule 26(c) of the Federal Rules of Civil Procedure allows the Court to issue protective orders for good cause shown to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including that the disclosure or discovery not be had or that the disclosure or discovery be limited to certain matters. Fed. R. Civ. P. 26(c). The party seeking the protective order bears the burden of showing that good cause exists for the order. *Peterson v. Outback Steakhouse*, 2016 U.S. Dist. LEXIS 129596, *3 (E.D. Mich. Sept. 22, 2016) (citing *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001)).

In this case, Regency Nursing asserts a need to speak to Haugabook's treating physicians regarding her medical care and treatment. It points to Colston's expert disclosures, in which she states that she will call Haugabook's treating physicians as fact witnesses -- as opposed to experts pursuant to Rule 26 -- to testify regarding the care and treatment that they provided to Haugabook. (DN 27 at 1-2 (discussing DN 22).) Regency Nursing argues that in order to develop its defenses in this matter, it must have an opportunity to investigate and discover information as to Haugabook's treating physicians' potential testimony. (*Id.* at 2.) Regency Nursing contends that pursuant to the Health Information Portability and Accountability Act of 1996 ("HIPAA"), Haugabook's treating physicians cannot speak with Regency Nursing about Haugabook's health information absent a court order. (*Id.*) Regency Nursing argues that under Kentucky law, with the issuance of such an order, it may *seek to* informally interview fact witnesses -- not compel the witnesses to speak -- in a way that comports with HIPAA and

2

protects Haugabook's privacy interests. (*Id.*) It therefore asks the Court to enter a qualified protective order permitting its counsel to conduct *ex parte* interviews with Haugabook's treating physicians regarding her medical care and conditions that are relevant to Colston's claims, Regency Nursing's defenses, and the treating physicians' potential testimony. (*Id.*)

### A. Analysis of the Motion Through the Lens of *Caldwell v. Chauvin*

In support of its motion, Regency Nursing relies heavily on a 2015 decision of the Supreme Court of Kentucky, *Caldwell v. Chauvin*, 464 S.W.3d 139 (Ky. 2015). In *Caldwell*, the Supreme Court of Kentucky upheld a decision of the trial court permitting defense counsel in a medical malpractice action to contact the plaintiff's treating physicians *ex parte*. *Id.* at 143. The court noted that litigants have historically been permitted to conduct *ex parte* interviews with fact witnesses for several reasons, but primarily in order to investigate facts and curtail litigation costs by allowing litigants to assess the usefulness of a witness's potential testimony by interviewing the witness before conducting a deposition. *Id.* at 142-43; *see also Hopper v. Ruta*, 2013 Colo. Dist. LEXIS 274, *6 (Colo. Dist. June 18, 2013) ("Informal methods of discovery not only effectuate the goals of the discovery process but tend to reduce litigation costs and simplify the flow of information [. . . and p]ersonal interviews are an accepted informal method of discovery.") (quoting *Samms v. District Court*, 908 P.2d 520, 526 (Colo. 1995) (internal citation omitted)). In *Caldwell*, as in most cases in which litigants oppose the issuance of qualified protective orders like the one sought by Regency Nursing, the plaintiff objected to the *ex parte* nature of the defendant's request. *Caldwell*, 464 S.W.3d at 146-47 (noting that the "gravamen of [plaintiff's] complaint is that through *ex parte* discovery -- which, by definition, takes place beyond the watchful eye of the court -- confidential or otherwise undiscoverable information, or

3

information protected by federal law, may be disclosed without [plaintiff's] consent and to her detriment").

The *Caldwell* court concluded that HIPAA does not prohibit *ex parte* interviews with treating physicians, but it does regulate the protected information that may be disclosed in such interviews.  The court described the "cornerstone of HIPAA's privacy rule" as a "broad prohibition on the disclosure of medical information," and recognized that "HIPAA provides for *mandatory* disclosure of protected health information by a covered entity under only two circumstances: (1) upon a request by an individual for her own health information or (2) when requested by the Secretary of [the Department of Health and Human Services] to investigate HIPAA compliance."  *Id.* at 149.  There are, however, many other *permissible* uses and disclosures of protected health information, as addressed in in 45 C.F.R. § 164.502(a)(1).  *Id.* "Among the permissible disclosures authorized by HIPAA, is the 'litigation exception,' which permits disclosure of protected health information 'in the course of any judicial or administrative proceeding' either '[i]n response to an order of a court of administrative tribunal' or '[i]n response to a subpoena, discovery request, or other lawful process,' so long as additional safeguards are met."[1]  *Id.* (quoting 45 C.F.R. § 164.512(e)(1)(i)-(ii)).

---

[1] In full, the litigation exception provides as follows:

> 1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
>
> (i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or
>
> (ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:
>
> (A) The covered entity receives satisfactory assurance, as described in paragraph

The *Caldwell* court reached this conclusion despite noting that "[n]oticeably absent from the sea of HIPAA privacy regulations is any mention of *ex parte* communications between counsel and a covered entity." *Id.*; *id.* at 149 n.39 (citing *Bayne v. Provost*, 359 F. Supp. 2d 234, 240 (N.D.N.Y. 2005) ("Absent within the four corners of the relevant rules and regulations and the enabling statute is any mention of the *ex parte* interview of a health provider, such as whether to prescribe or proscribe such actions . . . .")). While HIPAA does not expressly purport to regulate the permissibility of informal discussions with treating physicians, "[b]ecause HIPAA, by its terms, applies to the oral disclosure of protected health information, it has routinely been held that the disclosure of protected health information in *ex parte* interviews falls within the ambit of HIPAA." *Id.* at 149; *id.* at n.41 (citing *State ex rel. Proctor v. Messina*, 430 S.W.3d 145, 150 (Mo. 2010) (en banc) ("This federal regulation's use of the term *oral* communication clearly includes *ex parte* '*oral*' communications with a physician . . . .").

The *Caldwell* court noted a divergence of opinion among state courts that have addressed this issue. *Caldwell*, 464 S.W.3d at 150. However, it reasoned that in the context of the type of informal discovery now sought by Regency Nursing, HIPAA's privacy regulations should be viewed as "'merely superimpos[ing] procedural prerequisites' over informal *ex parte* discovery," and concluded that "[i]f a party satisfies the superimposed procedural requirements by fulfilling

---

(e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or

(B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

45 C.F.R. § 164.512(e)(1)(i)-(ii).

the litigation exception's requirement, the resulting *ex parte* contact has been drawn well within 'the course of [the] judicial . . . proceeding' as required by HIPAA." *Id.* at 151 (quoting *Arons v. Jutkcowitz*, 880 N.E.2d 831, 850 (N.Y. 2007)).  After a discussion of the term "lawful process," the court concluded that protected health information may only be disclosed under HIPAA's litigation exception if the exception's first prong is satisfied by order of the trial court. *Id.* at 152 ("Even though we have concluded that *ex parte* interviews are conducted within the course of a judicial proceeding, they are still decidedly informal and entirely voluntary, unbefitting of the designation of lawful process ascribed to formal discovery tools.").  The court reasoned that this interpretation of the litigation exception is consistent with the role of trial courts as "gatekeepers of discovery." *Id.* (citing *Primm v. Isaac*, 127 S.W.3d 630, 634 (Ky. 2004)) (parenthetical quotation omitted).  Specifically, the Supreme Court of Kentucky requires that prior to seeking *ex parte* disclosure of protected health information, a party must first seek authorization from the trial court. *Id.*; *id.* at 153 ("We [] hold HIPAA's procedural prerequisites to disclosure of protected health information may only be satisfied by order of a court or administrative tribunal . . . .").

The *Caldwell* court went on to examine Kentucky law on this issue in order to determine whether its interpretation of HIPAA and HIPAA's usual preemption of state law might be overridden by a more stringent state privacy law.  The court determined that Kentucky law did not compel a different conclusion, finding that Kentucky does not recognize a physician-patient privilege, that the American Medical Association's Code of Medical Ethics does not have the force of law such that it would render *ex parte* contacts with physicians impermissible, and that Kentucky case law does not preclude litigants from conducting *ex parte* interviews of treating

6

physicians. *Id.* at 154-58. With respect to the particular situation in issue in *Caldwell*, the court declined to enter a writ that would override a trial court order that did *not* authorize defense counsel to speak to plaintiff's treating physicians, reasoning that the injuries alleged in that case were too speculative to merit the extraordinary remedy of the writ. *Id.* at 159. However, it emphasized that "nothing in Kentucky law prohibits defendants from seeking *ex parte* contacts with nonexpert physicians that treated the plaintiff as if they are ordinary fact witnesses," and that "[t]rial courts may satisfy HIPAA and authorize disclosure of the plaintiff's protected health information in an *ex parte* interview by entering an order that complies with 45 C.F.R. § 164.512(e)(1)(i)." *Id.* at 159-60.

Since *Caldwell* was decided, courts in other jurisdictions have cited it as persuasive authority that HIPAA does not prohibit defendants from seeking *ex parte* communications with plaintiffs' treating physicians. *See, e.g.*, *Caldwell v. Baptist Mem. Hosp.*, 2016 Tenn. App. LEXIS 389, *20-21 (Tenn. Ct. App. June 3, 2016) (citing *Caldwell*, 464 S.W.3d 148-55, for proposition that neither HIPAA nor Kentucky law prohibits *ex parte* interviews by defendants with plaintiffs' treating physicians among list of other cases with similar conclusions); *Ginise v. Benchmark Senior Living, LLC* 2014 Conn. Super. LEXIS 4182, *15 n.5 (Conn. Super. Ct. Nov. 25, 2014) ("A number of jurisdictions have recognized that HIPAA does not prohibit *ex parte* communications between counsel for defendants and a treating health care provider (especially in a medical malpractice context), although it may impose limitations on the scope of communication in the absence of an authorization.") (citing *Caldwell*, 464 S.W.3d 139); *see also* 1-5 Ky. Evidence Law Handbook § 5.15 (noting that a physician is "a competent witness concerning any and all facts he may have learned as to [the patient's] physical condition while

treating him privately or while examining him as to his particular injury") (quoting *H.H. Waegner & Co. v. Moock*, 197 S.W.2d 254, 256 (Ky. 1946); *id.* at n.2 (citing *Caldwell*, 464 S.W.3d 139, for the propositions that "there is no patient-physician privilege in the law of Kentucky . . . [and] that the physician's ability to disclose the plaintiff's protected health information . . . is regulated by HIPAA, so disclosure may only be permitted by order of . . . court satisfying [HIPAA]").

### B.  Examination of Regency Nursing's Proposed Qualified Protective Order

The Court has closely reviewed the proposed qualified protective order (DN 27-1) filed by Regency Nursing to determine whether it is consistent with HIPAA's privacy protections and the Supreme Court of Kentucky's decision in *Caldwell*.  The Court notes that the *Caldwell* court did not explicitly dictate the permissible scope and required level of specificity for qualified protective orders like the one proposed by Regency Nursing.  The order set forth below closely tracks Regency Nursing's proposed order; any alterations have been made by the Court in an effort to comply with HIPAA's privacy protections and the Supreme Court of Kentucky's guidance in *Caldwell*.

**ORDER**

IT IS HEREBY ORDERED that Regency Nursing's motion for entry of a qualified protective order (DN 27) is **GRANTED**.  However, the Court DECLINES to enter the proposed order filed by Regency Nursing (DN 27-1) and instead ENTERS THE QUALIFIED PROTECTIVE ORDER SET FORTH BELOW.

**Qualified Protective Order**

Accordingly, IT IS ORDERED that counsel of record for Regency Nursing MAY communicate *ex parte* with treating physicians for decedent Haugabook regarding such aspects of Haugabook's medical conditions, care, and treatment as are relevant or related to any claims or defenses asserted in this action.  By entry of the instant Qualified Protective Order, Haugabook's treating physicians are authorized to disclose to defense counsel, verbally and in writing, in the course of informal, private, *ex parte* interviews or communications, any and all of Haugabook's protected health information that is relevant or related to the claims or defenses asserted in this action.

IT IS FURTHER ORDERED as follows:

1. Haugabook's protected health information owned, maintained, or otherwise in the custody of Haugabook's treating physicians that relates to the claims or defenses asserted in this action is DISCOVERABLE.

2. Pursuant to 45 C.F.R. § 164.512(e)(1)(i) and applicable federal and Kentucky law, this Court issues the instant Qualified Protective Order AUTHORIZING, but NOT REQUIIRNG, Haugabook's treating physicians to disclose her protected health information in the course of this judicial proceeding.  Such disclosure may be made through informal, private,

*ex parte* interviews or communications with defense counsel. No personal representative of Haugabook or legal counsel for Haugabook's estate need be present for or participate in those communications.

   3. Haugabook's treating physicians are AUTHORIZED to meet with and/or communicate with defense counsel their agents without first obtaining an authorization signed by Haugabook's personal representative and without first providing notice to Haugabook's personal representative or plaintiff's counsel.

   4. The parties shall mark as "CONFIDENTIAL" all records and other information provided to them by Haugabook's treating physicians and shall store all such records and information in a secure location.

   5. The parties shall not use or disclose the records and other information provided to them by Haugabook's treating physicians for any purpose unrelated to the instant litigation.

   6. The parties to this action MAY negotiate additional terms to the instant Qualified Protective Order, including terms related to the issues set forth in paragraphs 6 and 8 of Regency Nursing's proposed order (DN 27-1 at 2-3, ¶¶ 6, 8), but the Court will not impose such terms on the parties at this juncture.

cc: Counsel of record