UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16-CV-0050-GNS


JANICE COLSTON, as Executrix of the
Estate of Tommie Haugabook, deceased                                          PLAINTIFF


v.


REGENCY NURSING, LLC                                                         DEFENDANT




**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter is before the Court on: (1) Defendant's Motion for Partial Summary Judgment on Plaintiff's Statutory & Negligence Per Se Claims (DN 30); (2) Defendant's Motion for Partial Summary Judgment on Plaintiff's Wrongful Death Beneficiaries' Grief Claims (DN 31); (3) Defendant's Motion for Partial Summary Judgment on Plaintiff's Claim for Punitive Damages (DN 32); (4) Defendant's Motion to Exclude Medical Causation Testimony by Nurse Nancy Dion and Certain Arguments by Counsel (DN 33); and (5) Defendant's Motion for Summary Judgment and Motion for Partial Summary Judgment on Plaintiff's Claims for Past Medical Expenses (DN 34). For the reasons set forth below, Defendant's Motion for Summary Judgment (DN 34) is **GRANTED IN PART** and **DENIED AS MOOT IN PART**, and Defendant's other pending motions are **DENIED AS MOOT**.

# I.  BACKGROUND

## A.  Factual Background

On August 6, 2014, Tommie Haugabook ("Haugabook"), now deceased, was admitted to Regency Center—a nursing home facility owned and operated by Defendant Regency Nursing, LLC ("Defendant").  (Compl. ¶ 7, DN 1-2).  At that time of her admission Haugabook suffered from a variety of medical issues, including acute respiratory failure, diabetes mellitus, and breast cancer.  (Def.'s Expert Witness Disclosure Ex. E, at 2, DN 26-5 [hereinafter Lehman Report]; Garrett Dep. 7:23-25, Jan. 18, 2017, DN 38-4; Richardson Dep. 42:25-43:1, Jan. 18, 2017, DN 38-3).  As a result of these illnesses Haugabook was bed-ridden and non-verbal, wore a tracheal tube, and required total assistance from the nurses at Defendant's facility.  (Garrett Dep. 7:23-25; Danielle Richardson Dep. 28:11-14, Jan. 18, 2017, DN 38-2).

Throughout the course of Haugabook's stay at Regency Center, her daughter, Plaintiff Nicole Colston ("Colston"), visited her regularly.  (Colston Dep. 33:19-34:6, Nov. 10, 2016, DN 39-5).  During those visits Colston perceived that Regency Center nurses were providing Haugabook with substandard care.  Specifically, Colston observed that her mother's tracheal tube was often dirty and clogged, causing it to overflow onto Haugabook's chest.  (Colston Dep. 39:9-22).  In addition, Colston could regularly smell Haugabook's urine and feces as a result of the nursing staff's failure to change Haugabook's diaper.  (Colston Dep. 43:1-19).  Colston allegedly reported each instance of substandard care to the nurses' station near Haugabook's room, and, in response, the nurses always told her that they were "short staffed" and would "get to it when [they] could . . . ."  (Colston Dep. 40:1-9).

After many months of care at Regency Center and hospitalizations,[1] Haugabook died. (Def.'s Mot. Summ. J. Pl.'s Claim Punitive Damages Ex. A, DN 32-2). Her death certificate lists metastatic breast cancer and chronic respiratory failure as the official cause of her death. (Def.'s Mot. Summ. J. Pl.'s Claim Punitive Damages Ex. A; Delagarza Report 3).

## B.     Procedural Background

Colston, as executrix of Haugabook's estate, filed suit against Defendant raising three causes of action. (Compl. ¶¶ 8-40). The Complaint first alleges that the nurses at Regency Center acted negligently when they: (1) failed to perform a variety of tasks—such as ensuring that Haugabook received adequate skin and "incontinent care"—and (2) violated Kentucky statutes designed to protect elderly and incompetent individuals from abuse.[2] (*See* Compl. ¶¶ 17(e), 19(a)-(d)). Colston asserts that such failures caused Haugabook to suffer injuries, including: (1) skin breakdown around her chest, (2) infections (presumably in her urinary tract), and (3) dehydration.[3] (Compl. ¶ 13(c)-(g)). Second, the Complaints avers that the nurses violated KRS 216.515(6) when they subjected Haugabook to "mental and physical abuse" throughout her stay at Regency Center.[4] (Compl. ¶ 30(d)). Third, Colston claims that the nurses' "grossly negligent" conduct caused Haugabook's death. (Compl. ¶¶ 34-37). Further,

---

[1] The record indicates that Defendant transferred Haugabook from Regency Center to other hospitals on a number of different occasions. (Def.'s Mot. Lim. Exclude Medical Causation Test. Ex. C, at 3, DN 33-4 [hereinafter Delagarza Report]).

[2] Plaintiff claimed that Defendant committed common-law negligence and negligence per se when its nurses violated KRS 209.005, KRS 508.080-.090, and KRS 506.080. (Compl. ¶ 19(a)-(d)).

[3] In addition, Plaintiff seems to claim that Defendant's alleged failure to properly care for Haugabook's tracheal tube is an injury in and of itself. (Compl. ¶ 13(a)). But Defendant's failure to perform that act is not an injury; rather, the result of the failure to perform that act could constitute an injury. That said, the Court will only address Plaintiff's negligence claims insofar as they relate to a discernible injury, such as skin breakdown, infection, or death.

[4] Plaintiff also claimed that Defendant's alleged misconduct violated other subsections of KRS 216.515, but this Court disposed of those claims in a Memorandum Opinion & Order on June 8, 2017. (*See* Compl. ¶ 31(a)-(c), (e); Mem. Op. & Order, DN 25).

Colston charges that Defendant is liable for the nurses' misconduct and that the allegedly negligent acts were committed with "oppression, fraud, [or] malice," which justifies punitive damages. (*See* Compl. ¶¶ 21-28, 40).

The parties proceeded with discovery and disclosed their expert witnesses. Defendant submitted two expert reports—one from Vincent W. Delagarza, MD ("Delagarza"), the other from Janine Lehman, RN ("Lehman"). (*See* Delagarza Report; Lehman Report). Lehman's report explained that the nurses at Regency Center complied "with the applicable standard of care" in caring for Haugabook, and Delagarza opined that none of the nurses' alleged misconduct caused Haugabook's skin breakdown, infections, dehydration, or death. (Lehman Report 1-3; Delagarza Report 5-6; Delagarza Dep. 26:3-21, Aug. 16, 2017, DN 33-3). Plaintiff identified Nancy Dion, RN ("Dion") as an expert witness, but never submitted any documents detailing Dion's expert opinion. (*See* Pl.'s Expert Disclosure ¶ 1, DN 22). In fact, the only portion of Dion's deposition submitted to this Court was a one-page excerpt in which Dion testified that she is not qualified to give an opinion on whether the nurses' alleged negligence caused Haugabook's injuries. (Dion Dep. 106:4-12, Aug. 4, 2017, DN 32-4 [hereinafter Dion Dep.]).

### C.     Pending Motions

Once discovery closed, Defendant filed five motions, all of which are pending but only one of which is dispositive of Plaintiff's case, Defendant's Motion for Summary Judgment and Motion for Partial Summary Judgment on Plaintiff's Claims for Past Medical Expenses (DN 34) ("Defendant's Motion for Summary Judgment"). In that motion, Defendant argues that it is entitled to summary judgment on each of Plaintiff's claims because Plaintiff submitted no

evidence supporting her claim that the nurses' alleged misconduct caused Haugabook's injuries.[5]
(Def.'s Mem. Supp. Summ. J. 1-6).

Plaintiff has responded to each pending motion. Importantly, however, Plaintiff does not attach or cite to evidence in any of her responses supporting her contention that Defendant's alleged misconduct caused Haugabook's injuries. (*See, e.g.*, Pl.'s Resp. Def.'s Mot. Summ. J. Pl.'s Claims Past Medical Expenses, DN 35 [hereinafter Pl.'s Resp. Def.'s Mot. Summ. J.]). Defendant has filed reply briefs corresponding to each of its motions, largely reiterating the arguments it raised in its merits briefs. (*See, e.g.*, Def.'s Reply Supp. Mot. Summ. J., DN 47). The parties have fully briefed the pending motions and each is ripe for adjudication. As noted, however, Defendant's Motion for Summary Judgment (DN 34) is dispositive of the case and, as such, the Court will only address that motion.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party moving for summary judgment may satisfy its burden [of showing] that there are no genuine issues of material fact simply 'by pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.'" *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). Similarly, the movant may meet its burden by offering evidence negating an essential element of the non-

---

[5] Defendant also argues in this motion that the Court should grant it summary judgment on Plaintiff's claims for past medical expenses. (Def.'s Mem. Supp. Mot. Summ. J. & Mot. Partial Summ. J. Pl.'s Claims Past Medical Expenses 6-9, DN 34-1 [hereinafter Def.'s Mem. Supp. Summ. J.]).

moving party's claim.  *Dixon v. United States*, 178 F.3d 1294, 1999 WL 196498, at *3 (6th Cir. 1999).

After the movant either shows "that there is an absence of evidence to support the nonmoving party's case," or affirmatively negates an essential element of the non-moving party's claims, the non-moving party must identify admissible evidence that creates a dispute of fact for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  While the Court must view the evidence in a light most favorable to the non-moving party, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.

### III.    DISCUSSION

Defendant moves for summary judgment on Plaintiff's negligence, statutory, and wrongful death claims, arguing that she has not presented evidence showing that Defendant's alleged misconduct caused Haugabook's injuries.  (Def.'s Mem. Supp. Summ. J. 1-6).  In support, Defendant points out that its expert, Delagarza, has reported that its nurses did not cause any of Plaintiff's injuries, and that Plaintiff's expert, Dion, has testified that she is not qualified to testify regarding causation.  (Def.'s Mem. Supp. Summ. J. 1-6).  Thus, Defendant contends its unrebutted expert opinion negates an essential element of each of Plaintiff's claims, thereby entitling it to summary judgment.  (Def.'s Mem. Supp. Summ. J. 1-6).

At the outset, the Court observes that each of Plaintiff's causes of action requires her to show that Defendant caused decedent to suffer an injury.  Indeed, "[i]t is beyond dispute that

6

causation is a necessary element of proof in any negligence case," and causation is never presumed "from the mere evidence of mental pain and suffering" of the injured party.[6] *See Baylis v. Lourdes Hosp., Inc.*, 805 S.W.2d 122, 124 (Ky. 1991) (citation omitted). Similarly, Kentucky's wrongful death statute provides that "[w]henever the death of a person results from an injury inflicted by the negligence or wrongful act of another, damages may be recovered for the death from the person *who caused it . . . .*" KRS 411.130(1). Finally, the Kentucky Supreme Court has interpreted KRS 216.515(6)—which provides that "[a]ll [nursing home] residents shall be free from mental and physical abuse"—as creating "nothing other than a common law personal injury claim," meaning that the statute incorporates the common-law's causation requirement. *Kindred Nursing Ctrs. Ltd. P'ship*, 479 S.W.3d 69, 75-76 (Ky. 2015).

Delagarza's expert opinion affirmatively negates Colston's allegation that Defendant caused Haugabook's alleged injuries. (Delagarza Report 5-6; Delagarza Dep. 26:3-21). To be sure, Colston claims that Haugabook suffered the following injuries: (1) skin breakdown around her chest, (2) infections (presumably in her urinary tract), (3) dehydration, and (4) death. (Compl. ¶ 13(c)-(g)). The fatal flaw here is that Colston points to no evidence to support a finding that any of these injuries was caused by Defendant's substandard care. Absent such proof, Plaintiff's negligence claims fails as a matter of law. *See Andrew v. Begley*, 203 S.W.3d 165, 171 (Ky. App. 2006) ("[When] [t]here are no facts or circumstances from which negligence and causation can be inferred," "[a plaintiff] [is] required to present expert testimony on the issue of medical malpractice." (internal citation omitted)). Even in the absence of some evidence to

---

[6] The Court notes that the causation requirement of a common-law negligence claim is equally applicable to Plaintiff's negligence per se claims, meaning that, even if Plaintiff could establish that Defendant violated KRS 209.005, KRS 508.080-.090, or KRS 506.080, she would still need evidence that such violations *caused* Plaintiff's injuries. *See Stivers v. Ellington*, 140 S.W.3d 599, 601 (Ky. 2004) ("As with common-law negligence, causation and injury must still be proved in negligence per se claims.").

meet Plaintiff's burden of establishing causation, Defendant has affirmatively proven the *absence* of causation. Delagarza opines that: (1) the nurses' alleged failure to clean Haugabook's tracheal tube did not cause the skin breakdown on her chest, (2) Haugabook did not suffer from any infections, as her supposed urinary tract infection was actually "colonization" caused by Haugabook's old age, (3) Haugabook "was not dehydrated," and (4) "[t]he care rendered by the staff at [Regency Center] did not cause" Haugabook's death. (Delagarza Report 5-6; Delagarza Dep. 26:3-21).

Plaintiff can only avoid summary judgment by identifying evidence that rebuts Delagarza's opinion, and she has failed to do so. Contrary to the requirements of Kentucky law, Plaintiff has not presented expert reports or testimony explaining that Defendant's conduct caused Plaintiff's injuries. *See Baylis v. Lourdes Hosp., Inc.*, 805 S.W.2d 122, 124 (Ky. 1991) (observing that "proof of causation requires" expert testimony "in most medical negligence cases . . . ."). In fact, the only expert witness identified by Colston never opined that Defendant's conduct caused Haugabook's alleged injuries; to the contrary, Nurse Dion candidly admitted that she is *not* qualified to provide an opinion regarding causation. (Dion Dep. 106:4-12).

Under these circumstances, Defendant is entitled to summary judgment on each of Plaintiff's claims. *See Dixon*, 1999 WL 196498, at *3 (affirming grant of summary judgment for the defendant when the plaintiff failed to rebut the defendant's evidence negating an element of the plaintiff's claim). Plaintiff's case is therefore dismissed, and the rest of Defendant's pending motions are moot.[7]

---

[7] The portion of Defendant's Motion for Summary Judgment in which it seeks partial summary judgment on Plaintiff's claims for past medical expenses is also denied as moot, as that portion is irrelevant to the Court's disposition of the case. (*See* Def.'s Mem. Supp. Summ. J. 6-9).

## IV.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.     Defendant's Motion for Summary Judgment (DN 34) is **GRANTED IN PART** and **DENIED AS MOOT IN PART**.

2.     All other of Defendant's remaining pending motions (DN 30, 31, 32, 33) are **DENIED AS MOOT**.

**Greg N. Stivers, Judge**
**United States District Court**

February 6, 2018

cc:     counsel of record